## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

THE TRUMP ORGANIZATION
LLC and DTTM OPERATIONS
LLC,

    *Plaintiffs*,

    v.

THE INDIVIDUALS,
CORPORATIONS,
LIMITED LIABILITY
COMPANIES,
PARTNERSHIPS, and
UNINCORPORATED
ASSOCIATIONS
IDENTIFIED ON
SCHEDULE A,

    *Defendants*.

_____/

**Case No. 8:25-cv-01962**

**Temporary Injunctive
Relief Requested**

**Preliminary Injunctive
Relief Requested**

**Permanent Injunctive
Relief Requested**

**Monetary
Relief Requested**

## <u>COMPLAINT FOR TEMPORARY INJUNCTIVE, PRELIMINARY INJUNCTIVE, PERMANENT INJUNCTIVE, AND MONETARY RELIEF</u>

Plaintiffs, The Trump Organization LLC ("Trump Organization") and DTTM Operations LLC ("DTTM") (together, "Plaintiffs"), by and through their undersigned counsel, hereby allege as follows against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on Schedule A[1] (collectively, "Defendants"):

## **INTRODUCTION**

1.    This action has been filed by Plaintiffs to combat online counterfeiters who trade upon Plaintiffs' reputation and goodwill by selling and/or offering for sale products in connection with Plaintiffs' trademarks, which include United States Trademark Registration Nos. 4,276,258, 4,332,755, 5,080,397, and 7,758,981 for "TRUMP" (the "TRUMP Trademarks" or "Plaintiffs' Trademarks").

2.    The registrations are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates for the TRUMP Trademarks are attached hereto as **Exhibit 1**.

3.    Defendants are improperly advertising, marketing, and/or selling unauthorized and illegal products infringing upon at least a portion of Plaintiffs' TRUMP Trademarks (the "Counterfeit Products").    By selling

---

[1] Plaintiffs intend to file a Motion to Seal Schedule A.

Counterfeit Products that purport to be genuine and authorized products using the TRUMP Trademarks (the "TRUMP Products" or "Plaintiffs' Products"), Defendants cause confusion and deception in the marketplace.

4.     Defendants create numerous fully interactive commercial internet stores operating under the online marketplace accounts identified in Schedule A (collectively, the "Defendant Internet Stores"), including on the platforms AliExpress, Amazon, DHgate, eBay, and Walmart (collectively, the "Marketplace Platforms").

5.     Defendants design the online marketplace accounts to appear to be selling genuine TRUMP Products while selling inferior imitations of such products.

6.     Defendants' online marketplace accounts also share unique identifiers, such as design elements and similarities of the Counterfeit Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

7.     Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation.  Plaintiffs are forced to file this action to combat Defendants' counterfeiting of the TRUMP Trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products.

8.    As a result of Defendants' actions, Plaintiffs have been and continue to be irreparably damaged through consumer confusion, dilution, and tarnishment of their valuable trademarks and goodwill, and, therefore, seek temporary, preliminary, and permanent injunctive relief and monetary relief.

9.    This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Florida and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Florida and in this Judicial District.

10.    In addition, each Defendant has offered to sell and ship and/or sold and shipped infringing products into this Judicial District.

## SUBJECT MATTER JURISDICTION

11.    This Court has original subject matter jurisdiction over the trademark infringement and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

12.    This Court has jurisdiction over the state law claim in this action that arise under the laws of the State of Florida pursuant to 28 U.S.C. § 1367(a) because the state law claim is so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

## PERSONAL JURISDICTION AND VENUE

13.    Personal jurisdiction exists over Defendants in this Judicial District pursuant to Fla. Stat. § 48.193(1)(a)(1) and § 48.193(1)(a)(6), or in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in Florida and in this Judicial District, and/or derive substantial revenue from business transactions in Florida and in this Judicial District, and/or otherwise avail themselves of the privileges and protections of the laws of the State of Florida such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in Florida and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in Florida and this Judicial District. For example:

a.    Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including those in Florida, in this Judicial District, through accounts with the Marketplace Platforms as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants, and all persons in active concert or participation with any of

them ("User Account(s)"), through which consumers in the United States, including Florida (and more particularly, in this Judicial District), can view the one or more of Defendants' online marketplace accounts that each Defendant operates ("Defendant Internet Stores") and uses to communicate with Defendants regarding their listings for Counterfeit Products (as defined infra), and to place orders for, receive invoices for, and purchase Counterfeit Products for delivery in the United States, including Florida (and more particularly, in this Judicial District), as a means for establishing regular business with the United States, including Florida (and more particularly, in this Judicial District).

b.    Upon information and belief, Defendants have transacted business with consumers located in the United States, including Florida (and more particularly, in this Judicial District), for the sale and shipment of Counterfeit Products.

14.    Venue is proper in this Court pursuant to at least 28 U.S.C. § 1391(b)(2) because Defendants, who have committed acts of trademark infringement in this Judicial District, do substantial business in the Judicial District.

## THE PLAINTIFFS

15.    Plaintiff Trump Organization is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Florida.

16.    Plaintiff DTTM is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Florida.

17.    The Trump Organization is Plaintiffs' corporate office and is responsible for the enforcement of the federally registered trademarks owned by DTTM (attached as Exhibit 1), which were duly and legally issued by the United States Patent and Trademark Office, including but not limited to

| U.S. TM Reg. No. | Trademark | Registration Date | Relevant Class |
|---|---|---|---|
| 4,276,258 | TRUMP | January 15, 2013 | IC 016. US 002, 005, 022, 023, 029, 037, 038, 050. G&S: Desk accessories, namely, desk pads, paper weights, business card holders.<br><br>IC 021. US 002, 013, 023, 029, 030, 033, 040, 050. G&S: glasses, cups, bowls, decanters; beverage glassware. |
| 4,332,755 | TRUMP | May 7, 2013 | IC 016. US 022, 039. US 002, 005, 022, 023, 029, 037, 038, 050. G&S: greeting cards, posters and stationery paper. |

| U.S. TM Reg. No. | Trademark | Registration Date | Relevant Class |
|---|---|---|---|
| 7,758,981 | TRUMP | April 15, 2025 | IC 025. US 022, 039. G&S: Sneakers. |
| 5,080,397 | TRUMP | November 15, 2016 | IC 016. US 002, 005, 022, 023, 029, 037, 038, 050. G&S: Bumper stickers; decorative decals for vehicle windows; stickers; advertising signs of papers; advertising signs of cardboard; placards and banners of paper or cardboard; posters; pens. IC 025. US 022, 039. G&S: Clothing, namely, hats, sweatshirts, T-shirts, tank tops, headwear, long sleeve shirts; baby clothing, namely, one piece garments; children's clothing, namely, t-shirts. IC 026. US 037, 039, 040, 050. G&S: Campaign buttons. |

## THE DEFENDANTS

18.     Defendants are individuals and business entities who, upon information and belief, reside in East Asia.

19.     Defendants operate as merchants on online e-commerce platforms, including the Marketplace Platforms.

## THE TRUMP PRODUCTS

20.     From the date of the creation of the first TRUMP Products to the present, the Trump Organization and its authorized licensees are and have been the sole and official source of genuine TRUMP Products in the United States and Florida, which intersect a wide range of sectors, including various consumer products, real estate development, hospitality, golf, entertainment, and digital-blockchain-based assets.  Plaintiffs' promotional efforts for the TRUMP Products include, by way of example, but not limitation, substantial marketing and advertising on the internet, such as through the Trump Organization's official website (www.trump.com), the Trump Organization's official online store (www.trumpstore.com), and through television, social media, and other platforms.



*Exemplary Images of Plaintiffs' Products Incorporating the TRUMP Trademarks*

21.    For over forty years, the Trump Organization has licensed rights to its intellectual property, including the TRUMP Trademarks, to various third parties for the sale of numerous products that incorporated that intellectual property.  In addition, the TRUMP Trademarks are and have been the subject of substantial and continuous marketing and promotion by Plaintiffs.

10

Plaintiffs have and continue to widely market and promote the TRUMP Trademarks in the industry and to consumers.

22.    The registrations for the TRUMP Trademarks constitute *prima facie* evidence of their validity and of Plaintiffs' exclusive right to use the trademarks pursuant to 15 U.S.C. § 1057(b).

23.    Each of the TRUMP Trademarks qualifies as a famous mark, as that term is used in 15 U.S.C. § 1125(c)(1), and each of those specific marks has been continuously used and never abandoned.

24.    Plaintiffs have expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the TRUMP Trademarks.  As a result, products bearing the TRUMP Trademarks have become enormously popular around the world, driven by Plaintiffs' arduous quality standards and innovative business strategies.  The TRUMP Products are exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiffs.

## THE DEFENDANTS' UNLAWFUL CONDUCT

25.    The success of the TRUMP Products has resulted in significant counterfeiting.  Plaintiffs have identified numerous Defendant Internet Stores linked to fully interactive websites on e-commerce sites including the Marketplace Platforms.  These Defendant Internet Stores offer for sale, sell, and import Counterfeit Products to consumers in this Judicial District and throughout the United States.

26.    Defendants have persisted in creating such online marketplaces and internet stores, like the Defendant Internet Stores.  In fact, such online marketplaces and stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales.

27.    Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine TRUMP Products.  Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal.  Defendant internet stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

28.    Plaintiffs have not licensed or authorized Defendants to use the TRUMP Trademarks, and none of the Defendants is an authorized retailer of the genuine TRUMP Products.

29.    Defendants also deceive unknowing consumers by using without authorization the TRUMP Trademarks within the product descriptions, content, text, and/or meta tags of their websites to attract various search engines crawling the internet looking for websites relevant to consumer searches for TRUMP Products.  As such, Plaintiffs also seek to disable the Defendant Internet Stores owned and/or operated by Defendants that are the means by which Defendants could continue to sell Counterfeit Products into this Judicial District.

30.    On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores.  For example, it is common practice for counterfeiters to register their Defendant Internet Stores with incomplete information, randomly typed letters, or omitted cities or states.

31.    Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A, as well as other unknown fictitious names and addresses.  Such Defendant Internet Store registration patterns are one of many common tactics used by Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

32.    Even though Defendants operate under multiple fictitious names,

there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant marketplace websites have virtually identical layouts, even though different aliases were used to register the respective seller identities.

33.    In addition, the Counterfeit Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

34.    The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, meta data, lack of contact information, identically or similarly priced items and volume sales discounts, and/or the use of the same text and images.

35.    In addition, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit.

36.    Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners.

14

Counterfeiters also typically ship products in small quantities via international mail to minimize detection by law enforcement and other regulatory agencies. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiffs' enforcement efforts.

37.    Defendants also maintain offshore bank accounts and regularly move funds from their PayPal accounts to offshore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

38.    Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use the TRUMP Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Florida over the internet. Below are representative examples of Counterfeit Products offered for sale through the Defendants' online storefronts:



| Genuine TRUMP Products | Counterfeit Products |
|---|---|














39.    Each Defendant Internet Store offers shipping to the United States, including Florida (in this Judicial District) and, on information and belief, each Defendant has offered to sell counterfeit TRUMP Products into the United States, including Florida (in this Judicial District).

40.    Defendants' use of the TRUMP Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

41.    Prior to and contemporaneous with their counterfeiting actions alleged herein, Defendants had knowledge of Plaintiffs' ownership of the TRUMP Trademarks, of the fame and incalculable goodwill associated

therewith, and of the popularity and success of the TRUMP Products, and in bad faith proceeded to manufacture, market, develop, offer to be sold, and/or sell the Counterfeit Products.

42.    Defendants have been engaging in the illegal counterfeiting actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiffs' rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiffs and the TRUMP Products.

**FIRST CAUSE OF ACTION**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING**
**(15 U.S.C. § 1114 *et seq.*)**

43.    Plaintiffs repeat and incorporate by reference herein their allegations contained in paragraphs 1–42 of this Complaint.

44.    This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered TRUMP Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of counterfeit goods.  The TRUMP Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from Plaintiffs' products provided under the TRUMP Trademarks.

45.    Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the TRUMP Trademarks without

20

Plaintiffs' permission.

46.     Plaintiff DTTM is the registered owner of the TRUMP Trademarks, and Plaintiffs are the official source of TRUMP Products. The United States Registrations for the TRUMP Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiffs' rights in the TRUMP Trademarks and are willfully infringing and intentionally using counterfeits of the TRUMP Trademarks. Defendants' willful, intentional, and unauthorized use of the TRUMP Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

47.     As just two examples, Defendants deceive unknowing consumers by using the TRUMP Trademarks without authorization within the product descriptions of their online marketplace accounts to attract customers as follows:



*Exemplars of Counterfeit Products Sold by Defendants Infringing on Plaintiffs' Trademarks*

48.   Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

49.   The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful manufacture, use, advertisement, promotion, offering to sell, and/or sale of Counterfeit Products.

50.   Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their well-known TRUMP Trademarks.

## SECOND CAUSE OF ACTION
## FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a) *et seq.*)

51.   Plaintiffs repeat and incorporate by reference herein their allegations contained in paragraphs 1–42 of this Complaint.

52.   Defendants' manufacture, promotion, marketing, offering for sale, and/or sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiffs.

53.   By using the TRUMP Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the

23

Counterfeit Products.

54.    Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public under 15 U.S.C. §§ 1114, 1125.

55.    Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

### THIRD CAUSE OF ACTION
### COMMON LAW UNFAIR COMPETITION

56.    Plaintiffs repeat and incorporate by reference herein their allegations contained in paragraphs 1–42 of this Complaint.

57.    Plaintiffs have not licensed or authorized Defendants to use the TRUMP Trademarks, and none of the Defendants are authorized retailers of genuine TRUMP Products.

58.    Defendants knowingly and intentionally trade upon Plaintiffs' reputation and goodwill by selling and/or offering for sale products in connection with TRUMP Trademarks.

59.    Defendants' manufacture, promotion, marketing, offering for sale, and/or sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the quality, affiliation, connection, or association with Plaintiffs or the origin, sponsorship,

or approval of Defendants' Counterfeit Products by Plaintiffs in violation of Florida's common law of unfair competition.

60.    Defendants knew, or should have known, that their manufacture, promotion, marketing, offering for sale, and/or sale of Counterfeit Products has caused and will continue to cause confusion, mistake, and deception among purchasers, users, and the public.

61.    In fact, Defendants have fraudulently represented by their statements and actions that the Counterfeit Products are Plaintiffs' products including, for example, by (i) using the same or substantially similar payment and check-out methods on their websites to misdirect customers seeking TRUMP Products to the Defendant Internet Stores; (ii) using deceptive advertising practices within the content, text, and/or meta data of the online marketplace accounts; and (iii) taking other steps to deceive and confuse the consuming public.

62.    On information and belief, Defendants' conduct is willful and intentional as Defendants attempt to avoid liability by concealing their identities, using multiple fictitious names and addresses to register and operate their illegal counterfeiting operations and Defendant Internet Stores.

63.    Plaintiffs have no adequate remedy at law, and Defendants' conduct has caused Plaintiffs to suffer damage to their reputation and goodwill.  Unless enjoined by the Court, Plaintiffs will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment on all Counts of this Complaint and an award of equitable and monetary relief against Defendants as follows:

1.    That Defendants, their affiliates, officers, agents, servants, employees, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from

a.    using the TRUMP Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a TRUMP Product or is not authorized by Plaintiffs to be sold in connection with the TRUMP Trademarks;

b.    passing off, inducing, or enabling others to sell or pass off any product as a genuine TRUMP Product or any other product produced by Plaintiffs that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under

the TRUMP Trademarks;

       c.    committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

       d.    further infringing the TRUMP Trademarks and damaging Plaintiffs' goodwill;

       e.    otherwise competing unfairly with Plaintiffs in any manner;

       f.    shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any of Plaintiffs' Trademarks, including the TRUMP Trademarks;

       g.    using, linking to, transferring, selling, exercising control over, or otherwise owning the online marketplace accounts, the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products; and

       h.    operating and/or hosting websites at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the TRUMP Trademarks that is not a

genuine TRUMP Product or not authorized by Plaintiffs to be sold in connection with the TRUMP Trademarks.

2.     Entry of an Order that AliExpress, Amazon, DHgate, eBay, Walmart, and any other online marketplace account provider:

a.     disable and cease providing services for any accounts through which Defendants engage in the sale of Counterfeit Products, including any accounts associated with Defendants listed on Schedule A;

b.     disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Counterfeit Products;

c.     take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index; and

d.     deliver up and destroy all Counterfeit Products pursuant to 15 U.S.C. § 1118.

3.     That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the TRUMP Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117.

4.    In the alternative, that Plaintiffs be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the TRUMP Trademarks.

5.    That Plaintiffs be awarded their reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a) and (b); and

6.    Award any and all other relief that this Court deems just and proper.

Dated: July 25, 2025                    Respectfully submitted,

                                        By:  */s/ Jason Hilborn*

Katie Kavanaugh                         Jason Hilborn* (FBN 1008829)
(*pro hac vice* forthcoming)              *\*Lead Counsel*
**BOIES SCHILLER FLEXNER LLP**          **BOIES SCHILLER FLEXNER LLP**
2029 Century Park East, 1520            401 East Las Olas Blvd.
Los Angeles, CA 90067                   Suite 1200
Telephone: (213) 629-9040               Fort Lauderdale, FL 33301
kkavanaugh@bsfllp.com                   Telephone: (954) 356-0011
                                        jhilborn@bsfllp.com

                                        *Attorneys for Plaintiffs*