# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| THE TRUMP ORGANIZATION LLC and DTTM OPERATIONS LLC, | |
| *Plaintiffs,* | |
| v. | **Case No. 8:25-cv-01962** |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | **Temporary Injunctive Relief Requested** |
| *Defendants.* | |

_____/

## [PROPOSED] ORDER GRANTING PLAINTIFFS' *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER

**THIS MATTER** is before the Court upon Plaintiffs' *Ex Parte* Motion for Temporary Restraining Order ("Motion for TRO"). Plaintiffs, The Trump Organization LLC ("Trump Organization") and DTTM Operations LLC ("DTTM") (together, "Plaintiffs"), move *ex parte*, for entry of a temporary restraining order against Defendants, the Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations

identified on Schedule A to the Plaintiffs' Complaint (collectively "Defendants"), and an entry of an order restraining the financial accounts used by Defendants, pursuant to 15 U.S.C. § 1116, Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C. § 1651(a). The Court has carefully considered the Motion for TRO, the record in this case, the applicable law, and is otherwise fully advised.

For the reasons set forth herein, Plaintiffs' Motion for TRO is GRANTED.

## I.   **Factual Background**

The Trump Organization is responsible for the enforcement of the federally registered trademarks owned by DTTM (attached as Exhibit 1 to the declaration Plaintiffs submitted in support of their Motion for TRO), which were duly and legally issued by the United States Patent and Trademark Office, including but not limited to the following:

| U.S. TM Reg. No. | Trademark | Registration Date | Relevant Class |
|---|---|---|---|
| 4,276,258 | TRUMP | January 15, 2013 | IC 016. US 002, 005, 022, 023, 029, 037, 038, 050. G&S: Desk accessories, namely, desk pads, paper weights, business card holders<br><br>IC 021. US 002, 013, 023, 029, 030, 033, 040, |

2

| U.S. TM Reg. No. | Trademark | Registration Date | Relevant Class |
|---|---|---|---|
| | | | 050. G&S: glasses, cups, bowls, decanters; beverage glassware |
| 4,332,755 | TRUMP | May 7, 2013 | IC 016. US 022, 039. US 002, 005, 022, 023, 029, 037, 038, 050. G&S: greeting cards, posters and stationery paper |
| 7,758,981 | TRUMP | April 15, 2025 | IC 025. US 022, 039. G&S: Sneakers. |
| 5,080,397 | TRUMP | November 15, 2016 | IC 016. US 002, 005, 022, 023, 029, 037, 038, 050. G&S: Bumper stickers; decorative decals for vehicle windows; stickers; advertising signs of papers; advertising signs of cardboard; placards and banners of paper or cardboard; posters; pens.<br><br>IC 025. US 022, 039. G&S: Clothing, namely, hats, sweatshirts, T-shirts, tank tops, headwear, long sleeve shirts; baby clothing, namely, one piece garments; children's clothing, namely, t-shirts.<br><br>IC 026. US 037, 039, 040, 050. G&S: |

| U.S. TM Reg. No. | Trademark | Registration Date | Relevant Class |
|---|---|---|---|
|  |  |  | Campaign buttons. |

The Defendants, through the various internet based e-commerce stores operating under the seller identities identified on Schedule A (the "Defendant Internet Stores"), have advertised, promoted, offered for sale, and/or sold goods bearing and/or using what Plaintiffs have determined to be counterfeits, infringements, reproductions, or colorable imitations of the TRUMP Trademarks.  *See* Declaration of Alan Garten ("Garten Decl."), ¶¶ 12–14.

Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the TRUMP Trademarks.  *See* Garten Decl., ¶ 17.

Plaintiffs investigated the promotion and sale of counterfeit and infringing versions of the Plaintiffs' branded products by the Defendants.  *See* Garten Decl., ¶¶ 14–16.  Plaintiffs accessed or attempted to access each of the e-commerce stores operating under the Defendant Internet Stores, purchased or attempted to initiate the purchase of a product from each of the Defendant Internet Stores bearing counterfeits of the TRUMP Trademarks at issue in this action, and completed or attempted to complete a checkout page requesting each product to be shipped to an address in the Middle District of Florida.  *See id.*  Plaintiffs conducted a review and visually inspected the TRUMP branded

items for which orders were initiated by Plaintiffs' third-party investigator via the Defendant Internet Stores and determined the products were non-genuine, unauthorized versions of Plaintiffs' products. *See id.*

## II. Legal Standard

In order to obtain a temporary restraining order, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo,* 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto*

*Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

### III. Conclusions of Law

The declarations Plaintiffs submitted in support of the Motion for TRO support the following conclusions of law:

A. Plaintiffs have a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of the TRUMP Trademarks, and that the products Defendants are selling and promoting for sale are copies of Plaintiffs' respective products that bear and/or use copies of the TRUMP Trademarks.

B. Because of the infringement of the TRUMP Trademarks, Plaintiffs are likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. The following specific facts, as set forth in Plaintiffs' Complaint, Motion for TRO, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiffs and to consumers before Defendants can be heard in opposition unless Plaintiffs' request for *ex parte* relief is granted:

    1. Defendants own or control e-commerce stores and commercial internet websites operating under their respective seller identification names and domain names that advertise, promote, offer for sale,

and sell products bearing and/or using counterfeit trademarks in violation of Plaintiffs' respective rights;

    2.    There is good cause to believe that more counterfeit products bearing and/or using the TRUMP Trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and/or disappointed by the quality of these products; and that Plaintiffs may suffer loss of sales for their genuine products; and

    3.    There is good cause to believe that if Plaintiffs proceed on notice to Defendants on the Motion for TRO, Defendants can easily and quickly change the ownership or modify domain registration, e-commerce store, and private messaging account data and content, change payment accounts, redirect consumer traffic to other seller identification names, private messaging accounts, and domain names, and transfer assets and ownership of the seller identification names and domain names, thereby thwarting Plaintiffs' ability to obtain meaningful relief.

    C.    The balance of potential harm to Defendants in restraining their trade in counterfeit branded goods if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiffs, their reputation, and their goodwill as manufacturers and distributors of quality products if such relief is not issued.

    D.    The public interest favors issuance of the temporary restraining

7

order to protect Plaintiffs' trademark interests and protects the public from being defrauded by the palming off of counterfeit goods as Plaintiffs' genuine goods.

  E. Under 15 U.S.C. § 1117(a), Plaintiffs may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing and/or using counterfeits and infringements of Plaintiffs' Trademarks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

  F. Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (11th Cir. 1995) (*citing Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

  G. In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiffs have good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets

are restrained.

H.     Upon review of Plaintiffs' Complaint, Motion for TRO, and supporting evidentiary submissions, it is hereby ORDERED that Plaintiffs' Motion for TRO, is **GRANTED**, according to the terms set forth below:

## TEMPORARY RESTRAINING ORDER

(1)    Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby temporarily restrained as follows:

    a.    From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing and/or using the TRUMP Trademarks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiffs; and

    b.    From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of (i) any products not manufactured or distributed by Plaintiffs, bearing the TRUMP Trademarks, or bearing any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the TRUMP Trademarks or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or

9

owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant.

    c.  Effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) through (b).

  (2)  Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of the TRUMP Trademarks or any confusingly similar trademarks on or in connection with all internet based e-commerce stores and internet websites owned and operated, or controlled by them, including the internet based e-commerce stores and internet websites operating under the Defendant Internet Stores;

  (3)  Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of the TRUMP Trademarks, or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any webpage), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a

10

computer user or serves to direct computer searches to internet-based e-commerce stores and internet websites registered, owned, or operated by each Defendant, including the internet based e-commerce stores and internet websites operating under the Defendant Internet Stores;

(4) Each Defendant shall not transfer ownership of the internet based e-commerce stores and internet websites operating under their Defendant Internet Stores during the pendency of this action, or until further order of the Court;

(5) Each Defendant shall preserve copies of all computer files relating to the use of any of the internet based e-commerce stores and internet websites operating under their Defendant Internet Stores and shall take all steps necessary to retrieve computer files relating to the use of the internet based e-commerce stores and internet websites operating under their Defendant Internet Stores that may have been deleted before the entry of this Order;

(6) Within five (5) days of receipt of notice of this Order, Defendants and any third-party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms that are providing services for any of the Defendants, including but not limited to AliExpress, Amazon, DHgate, eBay, PayPal, Payoneer, and Walmart, and their related companies and affiliates (together, the "Third Party Providers"), shall:

    a. Restrain the transfer of all funds, including funds relating to

ongoing account activity, held or received for the Defendants' benefit or to be transferred into the Defendants' respective financial accounts, restrain any other financial accounts tied thereto, and immediately divert those restrained funds to a holding account for the trust of the Court. Such restraining of funds and disclosure of the related financial institution account information (as provided below) shall be made without notice to the account owners or the financial institutions until after those accounts are restrained.

        b.    Provide Plaintiffs expedited discovery of the following: (i) the identity of all financial accounts and/or sub-accounts associated with the internet based e-commerce stores operating under the Defendant Internet Stores identified on Schedule A, as well as any other accounts of the same customer(s); (ii) the identity and location of the Defendants identified in Schedule A, including all known contact information including any and all known aliases and associated email addresses; (iii) an accounting of the total funds restrained and identities of the financial account(s) and sub-account(s) for which the restrained funds are related; and (iv) information concerning sales of any Counterfeit Products made by Defendants.

(7)    Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order;

(8)    The Clerk of the Court is directed to issue a single original

summons in the name of "THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON THE SCHEDULE A" that shall apply to all Defendants. The combination of providing notice via electronic publication and email, along with any notice that Defendants receive from payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

(9)   This Order shall apply to the Defendant Internet Stores, associated e-commerce stores and websites, and any other seller identification names, e-commerce stores, private messaging accounts, domain names and websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting the TRUMP Trademarks at issue in this action and/or unfairly competing with Plaintiffs;

(10)   This Order shall remain in effect for two (2) weeks from the date of entry of this Order and expires on _____, 2025, or until such further dates as set by the Court or stipulated to by the parties;

(11)   Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiffs shall post a bond in the amount of Five Thousand Dollars and Zero Cents ($5,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the

13

pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice;

(12) After Plaintiffs' counsel has received confirmation from the Third Party Providers regarding the funds restrained as directed herein and expedited discovery from the same, Plaintiffs shall serve a copy of the Complaint, Schedule A, Summons, Motion for TRO, and this Order, on each Defendant via their corresponding email address and/or online contact form or other means of electronic contact provided on the e-commerce stores and websites operating under the respective Defendant Internet Stores, or by providing a copy of this Order by email to the marketplace platform or image-hosting website for each of the Defendant Internet Stores so that they, in turn, notify each Defendant of the Order, or by other means reasonably calculated to give notice that is permitted by the Court. In addition, Plaintiffs shall post copies of the Complaint, Schedule A, Summons, Motion for TRO, and this Order, as well as all other relevant documents filed in this action on the Plaintiffs' Notice Website and shall provide the address to the website to Defendants via email/online contact form, and such notice so given shall be deemed good and sufficient service thereof. Plaintiffs shall continue to provide notice of these proceedings and copies of the documents on file in this matter to Defendants regularly updating the Plaintiffs' Notice Website or by other

means reasonably calculated to give notice which is permitted by the Court.

(13)   The Clerk shall file this Order under seal until further order of the Court.

(14)   The Clerk shall email a copy of this Order to Plaintiff's counsel at jhilborn@bsfllp.com and kkavanaugh@bsfllp.com.

DONE AND ORDERED in Chambers at Tampa, Florida, this ___ day of _____, 2025.

 

**HONORABLE THOMAS BARBER**
**UNITED STATES DISTRICT JUDGE**

Copies provided to:
Counsel of Record