UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE TRUMP ORGANIZATION
LLC AND DTTM OPERATIONS
LLC,

  Plaintiffs,

v.           Case No.: 8:25-cv-1962-TPB-AAS

THE INDIVIDUALS,
CORPORATIONS,
LIMITED LIABILITY
COMPANIES, PARTNERSHIP,
and UNINCORPORATED
ASSOCIATIONS IDENTIFIED
ON SCHEDULE A,

  Defendants,

_____/

## <u>REPORT AND RECOMMENDATION</u>

The plaintiffs, The Trump Organization LLC (Trump LLC) and DTTM Operations LLC (DTTM), move for entry of default judgment against the defendants identified on Schedule A. (Doc. 71). The defendants identified on Schedule A include individuals, corporations, limited liability companies, partnerships, and unincorporated associations. (Doc. 71-2). The Schedule was amended to remove dismissed defendants from the case.[1] For the reasons

---

[1] The plaintiffs are not seeking entry of default against dismissed Defendants Beopjesk (DOE No. 8), ERRTAETA (DOE No. 9), WANGFA (DOE No. 12), 247embroidery (DOE No. 56), Beeapparel (DOE No. 57), best4sell2015 (DOE No. 58),

1

below, the undersigned **RECOMMENDS** that the plaintiffs' motion (Doc. 71) be **GRANTED.**

## I.   PROCEDURAL HISTORY AND BACKGROUND

The plaintiffs filed this action in response to the defendants' alleged trademark infringement of TRUMP trademarks. (Doc. 1, p. 2). DTTM owns the federally registered trademarks, and Trump LLC is the corporate office responsible for the enforcement of the trademarks. (Doc. 1, p. 7). On July 25, 2025, the plaintiffs filed a three-count complaint against the defendants. (Doc. 1). The complaint alleges the defendants infringed on registered TRUMP trademarks. The plaintiffs properly served the defendants pursuant to the alternate service order (Doc. 20), authorized under Federal Rule of Civil Procedure 4(f)(3).

## II.   JURISDICTION

The court has proper jurisdiction over the trademark infringement and false designation of origin claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a)−(b). The court has jurisdiction over the state law claim in this action

---

ceshi-60 (DOE No. 59), fpveqk27 (DOE No. 66), ha-cn14 (DOE No. 68), juejly (DOE No. 71), kobebryant3000 (DOE No. 72), phyinde (DOE No. 75), rionwinsh (DOE No. 78), ruoq-31 (DOE No. 79), shebaozh33 (DOE No. 83), snakatpue (DOE No. 84), sticker-bomber (DOE No. 86), zhanyang2014bj (DOE No. 91), Chill LLC (DOE No. 93), HEGUO (DOE No. 100), jiujiangqiangdianfa (DOE No. 102), lantai (DOE No. 104), LKHIOKPLER (DOE No. 106), Mingsi Cosmetics Co., Ltd (DOE No. 110), ranranYI (DOE No. 113), shishiYYun (DOE No. 118), Shiyun LLC (DOE No. 119), SIQIN INC (DOE No. 120), siquan (DOE No. 121), TOYOURKI (DOE No. 126), and XIGEII (DOE No. 130).

pursuant to 28 U.S.C. § 1367(a) because the state law claim is so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

## III.   STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court may enter a clerk's default. *See* Fed. R. Civ. P. 55(a). Second, after entry of the clerk's default, the court may enter default judgment against the defendant. Fed. R. Civ. P. 55(b)(2). "The effect of a default judgment is that the defendant admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (internal quotation and citation omitted).

A court must review the sufficiency of the complaint before determining whether a moving party is entitled to default judgment under Rule 55(b). *See United States v. Kahn*, 164 F. App'x 855, 858 (11th Cir. 2006) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "While a complaint . . . does not need detailed factual allegations," a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the

3

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If the admitted facts are sufficient to establish liability, the court must then determine the appropriate damages and enter final judgment in that amount. *See Nishimatsu*, 515 F.2d at 1206; *see also PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1216 (S.D. Fla. 2004).

## IV.   ANALYSIS

The complaint alleges three counts. Count I alleges trademark infringement and counterfeiting under 15 U.S.C. § 1114. Count II alleges false designation of origin under 15 U.S.C. § 1125(a). Count III alleges common law unfair competition.

### A.   Count I – Trademark Infringement and Counterfeiting

The complaint successfully alleges the defendants committed trademark infringement and counterfeiting under 15 U.S.C. § 1114. Under the Lanham Act, a defendant is liable for trademark infringement if a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale . . . or advertising of any goods . . . which such uses is likely to cause confusion . . . or to deceive." 15 U.S.C. § 1114(a). "To prevail on a claim of trademark infringement . . . [the plaintiff] must establish the following elements: (1) that it possesses a valid trademark, (2) that [the defendants] used the trademark, (3) that [the defendant's] use of

4

the mark occurred 'in commerce,' (4) that [the defendants] used the trademark 'in connection with the sale . . . or advertising of any goods,' and (5) that [the defendant] used the trademark 'in a manner likely to confuse customers.'" *Quincy Bioscience, LLC v. Stein*, No. 8:17-CV-984-T-27JSS, 2017 WL 10277184 at *2 (M.D. Fla. Nov. 21, 2017), *report and recommendation adopted*, No. 8:17-CV-984-T-27JSS, 2017 WL 10277178 (M.D. Fla. Dec. 7, 2017) (quoting *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211,1218 (11th Cir. 2008)). Courts consider the following seven factors when determining likelihood of confusion:

> (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion.

*Axiom Worldwide, Inc.*, 522 F.3d at 1220.

As to the first element, the plaintiffs allege DTTM owns valid TRUMP trademarks, (Doc. 1, ¶ 17) and the plaintiffs attached its registrations of TRUMP trademarks with the United States Patent and Trademark Office as Exhibit 1 to the complaint. (Doc. 1-1). As to the remaining elements, the complaint alleges the defendants used TRUMP trademarks, without permission, in commerce, and in connection with the sale and advertising of

goods in a manner likely to confuse consumers. (Doc. 1, ¶¶ 44−48). Specifically, the plaintiffs allege the defendants designed online internet stores appearing to be authorized online sellers selling genuine TRUMP products. (Doc. 1, ¶ 7). The plaintiffs further supported their allegation of the likelihood of confusion with a side-by-side comparison between genuine TRUMP products and counterfeit products. (Doc. 1, ¶¶ 38, 47). Accordingly, it is recommended default judgment be **GRANTED** as to Count I.

### B.    Count II – False Designation of Origin

The complaint successfully alleges a false designation of origin claim under 15 U.S.C. § 1125(a). "To prevail on a false designation of origin claim under 15 U.S.C. § 1125(a) a plaintiff must establish that the defendant adopted a mark confusingly similar to the plaintiff's mark such that there was a likelihood of confusion as to the origin of the goods." *Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1503 (11th Cir. 1985). The same seven factors used to determine the likelihood of confusion under trademark infringement are used to determine likelihood of confusion under a false designation of origin claim. *Id.* at 1503−04 ("The factors relevant to establishing [false designation of origin] are identical to the factors relevant to establishing a likelihood of confusion with respect to trademark infringement under 15 U.S.C. § 1114."). Therefore, "because [the plaintiffs] [have] sufficiently pleaded the fifth element for a claim of trademark infringement, [the plaintiffs] [have] also sufficiently

6

alleged its claim for false designation of origin." *Stein*, 2017 WL 10277184 at *3. It is recommended default judgment be **GRANTED** as to Count II.

### C.      Count III – Common Law Unfair Competition

The complaint successfully alleges an unfair competition claim under the common law. "The analysis of Florida common law claims of . . . unfair competition is the same as under the federal trademark infringement claim." *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003) (citing *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1521 (11th Cir. 1991)). Therefore, it is recommended default judgment be **GRANTED** as to Count III.

## V.    REMEDIES

Because the plaintiffs' well-pleaded facts support their claims against the defendants the court turns to the remedies and damages on these counts.

After liability is established, federal courts then address the terms of the judgment. *Rustik Haws, LLC v. Identiqa Sols. Co.*, No. 8:21-CV-00565-MSS-AEP, 2025 WL 470225 at *14 (M.D. Fla. Feb. 12, 2025). "A default judgment must not differ in kind from or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The moving party bears the burden of proving unliquidated or unspecified monetary sums in a hearing on damages or otherwise. *Rustik Haws*, 2025 WL 470225 at *14; *see* Fed. R. Civ. P 55(b)(1)−(2). The court must ensure there is a legitimate basis for awarding

damages, and ensure damages are not awarded solely because of a defendant's failure to respond. *See Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). However, well-pleaded damages are admitted by a default, and a hearing on damages may not be necessary. *Giovanno v. Fabec*, 804 F.3d 1361, 1366 (11th Cir. 2015).

In the complaint, the plaintiffs request permanent injunctive relief and monetary relief. (Doc. 1, pp. 26–29).

## A.    Injunctive Relief

The plaintiffs request the defendants, their affiliates, officers, agents, servants, employees, confederates, and all persons acting for, with, by, through, under, or in active concert with them be permanently enjoined and restrained from continuing to use and infringe on the TRUMP Trademarks in any manner.[2] (Doc. 1, pp. 26–28). The plaintiffs also request the court to order AliExpress, Amazon, DHgate, eBay, Walmart, and any other marketplace account provider to:

> a. disable and cease providing services for any accounts through which Defendants engage in the sale of Counterfeit Products, including any accounts associated with Defendants listed on Schedule A;

---

[2] The complaint's Prayer for Relief specifically requests the defendants be permanently enjoined from eight categories of activity involving infringement of the TRUMP Trademark. (Doc. 1, pp. 26–28).

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Counterfeit Products;

c. take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index; and

d. deliver up and destroy all Counterfeit Products pursuant to 15 U.S.C. § 1118

(Doc. 1, p. 28).

The court has "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116. To be granted a permanent injunction, a plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see Kobe Japanese Steak House of Fla., Inc. v. XU, Inc.*, No. 8:14-CV-490-T-23MAP, 2014 WL 6608967 at *1, 6 (M.D. Fla. Nov. 20, 2014) (granting permanent injunctive

relief as part of a default judgment in a trademark infringement case where the four elements were satisfied).

The plaintiffs pleaded all four elements entitling them to a permanent injunction against the continued infringement of TRUMP Trademarks. The complaint sufficiently pleads the plaintiffs have and continue to suffer irreparable harm and there is no adequate remedy at law because the TRUMP brand is being "damaged through consumer confusion, dilution, and tarnishment of their valuable trademarks and goodwill." (Doc. 1, ¶¶ 8, 40, 50, 55, 63). *See Bioclin BV v. Multygyn USA, LLC*, 72 F. Supp. 3d 1288, 1296 (M.D. Fla. 2014) ("The Eleventh Circuit has noted that trademark infringement by its nature often results in irreparable harm and that there is generally no adequate remedy at law.") (quoting *Tally–Ho, Inc. v. Coast Comm. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir.1989)). Absent an injunction, the plaintiffs are likely to continue suffering the same harm. Turning to the balance of hardships, the defendants, who have not appeared, have not presented a hardship to the court and none is apparent. In contrast, the plaintiffs face hardship resulting from the infringement of their trademarks. Lastly, the public interest would not be disserved by a permanent injunction. *Cf. Nike, Inc. v. Leslie*, No. 85-960 CIV-T-15, 1985 WL 5251 at *1 (M.D. Fla. June 24, 1985) ("an injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior.").

10

Accordingly, it is recommended pursuant to 15 U.S.C. § 1116 that the defendants, their affiliates, officers, agents, servants, employees, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from the following actions as listed in subsections (a)–(h) of paragraph one under the Prayer for Relief:

a. using the TRUMP Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a TRUMP Product or is not authorized by Plaintiffs to be sold in connection with the TRUMP Trademarks;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine TRUMP Product or any other product produced by Plaintiffs that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under the TRUMP Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

d. further infringing the TRUMP Trademarks and damaging Plaintiffs' goodwill;

e. otherwise competing unfairly with Plaintiffs in any manner;

f. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any of Plaintiffs' Trademarks, including the TRUMP Trademarks;

11

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the online marketplace accounts, the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products; and

h. operating and/or hosting websites at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the TRUMP Trademarks that is not a genuine TRUMP Product or not authorized by Plaintiffs to be sold in connection with the TRUMP Trademarks.

(Doc. 1, pp. 26–28). In addition, it is recommended AliExpress, Amazon, DHgate, eBay, Walmart, and any other online market account provider be ordered to:

a. disable and cease providing services for any accounts through which Defendants engage in the sale of Counterfeit Products, including any accounts associated with Defendants listed on Schedule A;

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Counterfeit Products;

c. take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index; and

d. deliver up and destroy all Counterfeit Products pursuant to 15 U.S.C. § 1118

(Doc. 1, p. 28); *see Ain Jeem, Inc. v. Individuals*, No. 8:21-CV-1261-VMC-JSS, 2022 WL 2306874 at *2–3 (M.D. Fla. Feb. 15, 2022) (granting

similar injunctive relief directing the "Internet marketplace website operators . . . to permanently remove any and all listings and associated images of goods bearing counterfeits and/or infringements . . .").

## B.   Monetary Relief

In the complaint, the plaintiffs request "[t]hat Defendants account for and pay to Plaintiffs all profits realized by Defendants . . . and that the amount of damages . . . be increased by a sum not exceeding three times the amount thereof as provided by U.S.C. § 1117." (Doc. 1, p. 28). In the alternative, the plaintiff's request statutory damages pursuant to U.S.C. § 1117(c) "of not less than $1,000 and not more than $2,000,000 for each and every use of the TRUMP Trademarks." (Doc. 1, p. 29). The plaintiffs also request reasonable attorney's fees. (*Id.*).

### i.  Statutory Damages

The motion for default judgment clarifies that the plaintiffs seek an award of statutory damages. (Doc. 71, p. 23). *See Stein*, 2017 WL 10277184 at *4 (allowing the plaintiff's supplement to the motion for default judgment to clarify it seeks an award of statutory damages among other remedies). Specifically, the plaintiffs request the court award statutory damages in the amount of $200,000 against each defaulting defendant under Count I. (Doc. 71, p. 23). The plaintiffs state "judgment on Counts II and III should be limited to

the amount awarded under Count I and entry of the requested equitable relief."
(Doc. 71, p. 24).

"In a case involving the use of a counterfeit mark . . . the plaintiff may elect . . . instead of actual damages . . . an award of statutory damages . . . of not less than $1,000 or more than $200,000 per counterfeit mark per type of goods . . . sold . . . as the court considers just." 15 U.S.C. § 1117(c)(1). If the infringement is willful, the Lanham Act permits the court to award up to $2,000,000 in statutory damages per infringing trademark. 15 U.S.C. § 1117(c)(2).

"This Court may award statutory damages without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed." *Ain Jeem, Inc. v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 8:21-CV-1261-VMC-JSS, 2022 WL 2306858 (M.D. Fla. Jan. 27, 2022), *report and recommendation adopted sub nom. Ain Jeem, Inc*, 2022 WL 2306874 (M.D. Fla. Feb. 15, 2022) (citation and internal quotation omitted). "[A]n evidentiary hearing is not necessary where there is sufficient evidence on the record to support the request for damages." *Id.* In addition, "the [c]ourt may only award damages if the record contains a basis for the award (even in default situations) and . . . the [c]ourt has wide discretion in awarding statutory damages." *Kobe Japanese Steak House*, 2014 WL 6608967 at *6.

14

"The Lanham Act, however, 'does not provide guidelines for courts to use in determining an appropriate award.'" *Kobe Japanese Steak House*, 2014 WL 6608967 at *4 (quoting *Chanel, Inc. v. Mesadieu,* No. 6:08–cv–1557–Orl–31KRS, 2009 WL 2496586, at *6 (M.D. Fla. Aug.12, 2009)). When awarding statutory damages courts "strive to 'accomplish the dual goals of compensation and deterrence, and in particular, to emphasize that the trademark laws and court proceedings are not mere incidental costs to doing business in the profitable counterfeit trade.'" *Id.* (quoting *Gucci Am., Inc. v. Tyrrell–Miller,* 678 F.Supp.2d 117, at 122–23 (S.D.N.Y.2008)).

Given the lack of guidance under the Lanham Act for achieving the dual goals of compensation and deterrence, "many courts look to the Copyright Act's analogous provision, 17 U.S.C § 504(c) when calculating statutory damages." *Id.* at 5. Under the Copy Right Act courts consider the following factors:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*Id.*; *Rolex Watch U.S.A., Inc. v. Lynch*, No. 2:12-CV-542-FTM-38, 2013 WL 2897939 at *5 (M.D. Fla. June 12, 2013).

The plaintiffs submitted no evidence concerning the expenses saved and profits reaped, revenues lost, or specific monetary value of the Trademarks.

15

However, the allegations in the complaint, which are taken as true, establish the defendants willfully infringed on TRUMP Trademarks for the purpose of trading on the goodwill of and reputation of the plaintiffs and Trump products.[3] (Doc. 1, ¶¶ 38, 42, 46, 48, 54, 62). *See Ain Jeem, Inc.*, 2022 WL 2306858 (M.D. Fla. Jan. 27, 2022), *report and recommendation adopted sub nom. Ain Jeem, Inc.*, 2022 WL 2306874 (concluding willful infringement occurred under similar circumstances).

In addition, the plaintiffs could obtain discovery to learn information about the profits the defendants reaped even though the defendants have not participated in this litigation. The court notes, the plaintiffs seemingly discovered some financial information through third party providers, including, but not limited to, AliExpress, Amazon, DHgate, eBay, PayPal, Payoneer, PingPong, and Walmart. The plaintiffs' motion indicates the third-party providers complied with the Temporary Restraining Order which required "any third party to . . . provide Plaintiffs expedited discovery of the following: . . . an accounting of the total funds restrained . . . and information concerning sales of any Counterfeit Products." (Doc. 71, pp. 6−7). Further, upon

---

[3] The plaintiffs allege they "have expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the TRUMP Trademarks." (Doc. 1, ¶ 24). As a result, the plaintiffs allege the TRUMP Trademarks have become enormously popular around the world. (*Id.*). Consequently, they argue the Lanham Act permits the court to award up to $2,000,000 in statutory damages per infringing trademark.

16

review of the extensive documentation of the counterfeit Trump products, it is evident the counterfeit products are marketed at relatively low prices, which, even assuming a high volume of sales, likely does not reach near $200,000 per defaulting defendant. *See Kobe Japanese Steak House*, 2014 WL 6608967 at \*4 (supporting statutory damages should accomplish dual goals of compensation and deterrence).

Upon consideration of these factors, the undersigned finds $100,000 in statutory damages per defaulting defendant are reasonable and just damages that serve the dual purpose of compensation and deterrence. *See Rolex*, 2013 WL 2897939 at \*6 (M.D. Fla. June 12, 2013) (recommending $100,000 in statutory damages per willful infringement, for a total of $800,000, on default judgment where "Rolex submitted no evidence . . . concerning the expenses saved and profits reaped by Defendant Lynch or its lost revenues due to Lynch's acts."); *Stein*, 2017 WL 10277184 at \*5 (recommending $100,000 in statutory damages on default judgment for one infringed trademark under similar circumstances); *Kobe Japanese Steak House*, 2014 WL 6608967 at \*5−6 (awarding $100,000 in statutory damages on default judgment where "there [was] no evidence regarding the actual scope of Defendant's sales" after calculating the plaintiffs advertising costs per week and increasing that sum "to $100,000 deter future misconduct"); *Ain Jeem*, 2022 WL 2306858 at \*6 (recommending $100,000 in statutory damages against each defendant on

17

default judgment where the defendants willfully infringed on the trademark "for the purpose of deriving the benefit of Plaintiff's world-famous reputation."). Accordingly, it is recommended $100,000 in statutory damages be awarded against each defaulting defendant.

### ii. Reasonable Attorney's Fees

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "[T]o be an 'exceptional case' under the Lanham Act requires only that a case 'stands out from others,' either based on the strength of the litigating positions or the manner in which the case was litigated." *Tobinick v. Novella*, 884 F.3d 1110, 1118 (11th Cir. 2018) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). "Willfully infringing a patent or trademark and completely failing to appear can each justify an award of attorney's fees.*" Stache Prods., LLC v. Green Bros. Wholesale Inc.*, No. 3:24-CV-519-MMH-LLL, 2025 WL 1530931 at *9 (M.D. Fla. May 29, 2025) (finding the plaintiff entitled to attorney's fees when there was willful infringement and a default judgment); *Trove Brands, LLC v. JH Studios, Inc.*, No. 8:19-CV-1809-KKM-AAS, 2022 WL 827789 at *2 (M.D. Fla. Mar. 3, 2022), *report and recommendation adopted*, No. 8:19-CV-1809-KKM-AAS, 2022 WL 824404 (M.D. Fla. Mar. 18, 2022) ("Because [the defendant] did not appear, its actions are considered willful by its default . . . Thus, this action is an exceptional case that entitles [the plaintiff] to an award of attorney's

18

fees"). Accordingly, this is an exceptional case that entitles the plaintiffs to attorney's fees. The plaintiffs should be ordered to file a motion addressing the amount of fees to be awarded.

## VI.    CONCLUSION

For the reasons stated, the undersigned **RECOMMENDS** that the plaintiffs' motion for default judgment (Doc. 71) be **GRANTED**. Default judgment on Count I, II, and III should be **ENTERED** and the defaulting defendants should each be liable for $100,000 in statutory damages for willful infringement. Equitable relief should be granted in the form of a permanent injunction preventing the defendants from partaking in the actions described in paragraph one, subsections (a)−(h) of the complaint's prayer for relief. Further injunctive relief should be granted as described in paragraph two, subsections (a)−(d) of the complaint's prayer for relief. Last, the court should conclude the plaintiffs are entitled to attorney's fees and order the plaintiffs to file a motion (with supporting documentation) addressing the amount of fees to be awarded

**ENTERED** in Tampa, Florida, on February 5, 2026.

_Amanda Arnold Sansone_
AMANDA ARNOLD SANSONE
United States Magistrate Judge

19

## **<u>NOTICE TO PARTIES</u>**

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely under 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.